**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Bradly Allen McHorse,

Plaintiff,

v.

The State of Minnesota and Keith Ellison,

Defendants.

Case No. 26-cv-02053 (KMM/ECW)

**REPORT AND RECOMMENDATION**

---

Before the Court are Plaintiff Bradly Allen McHorse's Complaint (Dkt. 1) and Application to Proceed *In Forma Pauperis* (Dkt. 2 ("IFP Application")). For the reasons below, the Court recommends dismissing this action and denying the IFP Application as moot.

**BACKGROUND**

McHorse resides at the Forensic Mental Health Program ("FHMP") at the St. Peter Regional Treatment Center (formerly the Minnesota Security Hospital). (*See* Dkt. 1 at 1.) As the Court understands it, he is a civilly committed patient (i.e., not a person serving a criminal sentence). *See, e.g.*, *McHorse v. Minn. Dep't of Human Servs.*, No. 21-CV-2103 (PAM/JFD), 2021 WL 4895281, at *1 (D. Minn. Oct. 20, 2021) (noting McHorse's civil-commitment status).

The Complaint's caption names one defendant, the State of Minnesota. (Dkt. 1 at 1.) But McHorse also lists Minnesota Attorney General Keith Ellison in the Complaint's defendant-identification section. (*See id.* at 2.) No "Doe" defendants are

named, and the Complaint does not specify the capacity in which McHorse sues Ellison. (*Id.*)  For present purposes, the Court assumes that McHorse intends to name Ellison as a defendant and to sue him in both his individual and official capacities.

The Complaint purports to describe ongoing statewide practices regarding the treatment of civilly committed people.  (*See id.* at 6.)  As the Court understands it, McHorse contends that Minnesota Statutes § 253B.18, part of Minnesota's Commitment and Treatment Act, entitles persons committed as "mentally ill and dangerous" ("MI&D")—like McHorse—to treatment at either "a secure treatment facility or a treatment facility or state-operated program willing to accept the patient under commitment."  (*Id.* (emphases removed).)  McHorse also alleges that Minnesota's relevant "licensing agencies," the Minnesota Department of Health and the Minnesota Department of Human Services, license no facility, secure or otherwise, for treating MI&D-committed persons except the FHMP.  (*Id.*)

From this, McHorse argues that the State of Minnesota has made itself "the sole regulator, licens[or], licensee, insurer, and recipient of insurance funds in the State of Minnesota's market [of] [MI&D] treatment facilities."  (*Id.*)  He further contends that this "licensing policy" violates Section 2 of the Sherman Act.  (*Id.*[1])  Drawing a historical analogy, McHorse asserts that, as in *The Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873), the State has exercised its police power in a way that, despite "good intentions to

---

[1]    Sherman Antitrust Act, ch. 647, 26 Stat. 209 (1890) (codified as amended at 15 U.S.C. §§ 1-7).

protect the public," "has created a monopoly where the consumers are forced to use the [state's] services only." (*Id.*)

McHorse also alleges that the State "violate[s] the Fourteenth Amendment by warehousing and boarding a backlog of persons who are waiting in jails and institutions around Minnesota for an open bed who can be served in other facilities other than the [FMHP]." (*Id.*) The Complaint focuses on a systemic "backlog" of unnamed third persons waiting in county jails and other institutions.[2] (*Id.*)

Construing the Complaint liberally, the Court identifies three distinct claims. First, McHorse asserts a claim under 42 U.S.C. § 1983, based on the Fourteenth Amendment, alleging that the State of Minnesota unconstitutionally warehouses and boards civil detainees in county jails and other institutions while they await beds at FHMP, even though they could be treated elsewhere. (*Id.*) Second, McHorse asserts a claim under Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, alleging that the State of Minnesota maintains an unlawful monopoly over MI&D treatment facilities. (*Id.*) Third, McHorse appears to invoke Minnesota law (specifically, Minn. Stat. § 253B.18) to claim that the State's current licensing and placement practices violate the State's Commitment and Treatment Act.

---

[2]     Notably, McHorse does not allege that he is currently confined in a county jail awaiting transfer, was denied admission to the FHMP, or was personally denied treatment. As noted above, he currently resides at the FHMP. Furthermore, apart from listing Ellison by title and service address, the Complaint attributes no specific act, omission, decision, policy directive, or communication to Ellison personally. All substantive factual allegations in the Complaint purport to concern statewide licensing, commitment, and treatment practices.

McHorse seeks three forms of relief.[3]  First, he requests a "temporary Injunction prohibiting the State of Minnesota from further acts until the court can rule on the informa pauperis." (Dkt. at 4.)  The Court interprets this as a request for a temporary restraining order.  Second, he seeks an order requiring the "vetting of individuals on backlog who have served sentences for overt acts, so it can be determined that whether they can receive community care as an alternative to MI&D commitment." (*Id.*)  Third, he seeks "financial compensation to be determined by the jury." (*Id.*)

### ANALYSIS

**A.      Standards of Review**

Rather than pay this action's filing fee, McHorse submitted the IFP Application (Dkt. 2), which suggests that as a financial matter he may qualify for in forma pauperis ("IFP") status.  Under the federal statute governing IFP proceedings, however, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous[] or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (citing *Neitzke*).  Courts in this District routinely dismiss complaints

---

[3]      The Complaint is ambiguous as to whether McHorse seeks relief for injuries to himself, for injuries to other committed persons, or for injuries to others based on this alleged "backlog." *See*, *infra section* C.

as factually frivolous when they fail to allege how a defendant's actions establish liability. *See, e.g.*, *Gofan v. Miles*, No. 25-CV-0328 (PJS/DJF), 2025 WL 375137, at *1 (D. Minn. Feb. 3, 2025); *Logering v. Morrison Cnty. Sheriff's Dep't*, No. 23-CV-0177 (JWB/LIB), 2023 WL 3276515, at *4 (D. Minn. May 5, 2023) (citing cases), *aff'd*, No. 23-2376, 2023 WL 8713781 (8th Cir. Dec. 18, 2023).

Furthermore, under Federal Rule of Civil Procedure 12(h)(3), if a court lacks subject-matter jurisdiction over an action, the Court must dismiss the matter.

**B.     Eleventh Amendment Sovereign Immunity**

The Eleventh Amendment immediately forecloses much of this suit.  The Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."  U.S. Const. amend. XI.  The Supreme Court has long read that provision as also barring federal-court jurisdiction over suits by a State's own citizens against a nonconsenting State.  *See, e.g.*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1 (1890)); *Lors v. Dean*, 746 F.3d 857, 862 (8th Cir. 2014) (citing *Hans*).

Sovereign immunity applies unless a state unequivocally waives it or Congress validly abrogates it under a constitutional power.  *See, e.g.*, *Seminole Tribe*, 517 U.S. at 54-55; *Quinnett v. Iowa*, 644 F.3d 630, 632 (8th Cir. 2011) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011)).  Here, nothing in the Complaint suggests that Minnesota has consented to suit on these claims.  Furthermore, Congress did not abrogate state sovereign immunity when it enacted § 1983 or the Sherman Act.

5

*See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 338-41 (1979) (concerning § 1983); *Sinclair v. Benysek*, No. 25-CV-3880 (KMM/DTS), 2026 WL 524014, at *2 (D. Minn. Feb. 25, 2026) (finding that Minnesota has not consented to be sued in federal court under § 1983); *Beck v. Catanzarite L. Corp.*, No. 22-CV-1616 (BAS/DDL), 2023 WL 1999485, at *8 (S.D. Cal. Feb. 14, 2023) (concerning Sherman Act; citing *Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw., Inc.*, 810 F.2d 869, 873-74 (9th Cir. 1987)); *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019) (concerning Sherman Act; citing cases). "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citing cases). All claims against the State of Minnesota are thus jurisdictionally barred.[4]

To be sure, *Ex parte Young*, 209 U.S. 123 (1908), creates a narrow exception: a federal court may hear a suit against a state official in his or her official capacity for prospective injunctive or declaratory relief to end an ongoing federal-law violation. *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645-46 (2002) (discussing *Ex parte Young* doctrine); *Cunningham v. Kahler*, 171 F.4th 1115, 1119 (8th Cir. 2026) (same). Critically, though, the *Ex parte Young* exception only permits suit against a state officer with a sufficient connection to the challenged policy. *See, e.g.*,

---

[4] Any § 1983 claim against the State independently fails because a State is not a "person" suable under § 1983. *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Any official-capacity damages claim against Ellison is, in substance, a claim against the State and is likewise barred. *See, e.g.*, *id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).

*Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (citing cases); *AbbVie, Inc. v. Ellison*, 777 F. Supp. 3d 971, 976 (D. Minn. 2025) (quoting *Hutchinson*).

Here, the Complaint lists Ellison by title and service address but pleads no facts showing he personally made, enforced, or threatened to enforce the challenged licensing, placement, or treatment decisions. *Ex parte Young* is therefore not adequately invoked as to any state officer in this pleading; the doctrine saves none of the claims.[5]

## C.   Article III Standing

The Complaint also raises a second jurisdictional problem: standing. Article III of the U.S. Constitution limits federal jurisdiction to cases in which a plaintiff suffered an injury-in-fact that is concrete, particularized, and actual or imminent; fairly traceable to the challenged conduct; and likely to be redressed by a favorable decision. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quoting cases); *Get Loud Arkansas v. Jester*, 171 F.4th 1058, 1064 (8th Cir. 2026) (citing *Lujan*). A litigant therefore generally "'must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)); *Conley v.*

---

[5]   Also relevant is *Ex parte Young*'s restriction to cases involving violations of *federal* law. To the extent that McHorse asks this Court to enforce Minn. Stat. § 253B.18, or compel Minnesota officials to follow the Minnesota Commitment and Treatment Act, that request conflicts with the rule that a federal court cannot use *Ex parte Young* to require state officials to follow state law. *See Pennhurst*, 465 U.S. at 106 (explaining that *Ex parte Young* is "inapplicable in a suit against state officials on the basis of state law"); *Smith v. Reynolds*, 139 F.4th 631, 637 (8th Cir. 2025) (quoting *Pennhurst*).

*City of W. Des Moines*, 157 F.4th 946, 952 (8th Cir. 2025) (making same point (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).

The relief that McHorse most concretely requests here is judicially ordered "vetting" of persons on the admissions "backlog" to determine whether community care could serve them rather than MI&D commitment. This runs directly into the limits on third-party standing. McHorse is already committed and housed at the FHMP. He does not allege that he awaits admission from a county jail or other facility, was denied admission, or faces imminent transfer from the FHMP to a jail or other institution. The requested "vetting" would benefit others, not him. Whatever the merits of the underlying concern, McHorse cannot litigate it on others' behalf. The Court recommends dismissing for lack of Article III standing any claims advancing a generalized grievance about statewide policy or seeking relief on behalf of others.

**D.     Individual-Capacity Claims Against Ellison**

After the jurisdictional analysis above, the only potential surviving claims are any individual-capacity claims against Ellison. But as noted above, the Complaint contains no allegations about him whatsoever. The Complaint as pleaded is therefore factually frivolous as to him, and the Court recommends dismissing any individual-capacity claims against Ellison on that basis. *See Zimmerman v. Bellows*, 988 F. Supp. 2d 1026, 1033 (D. Minn. 2013) ("Individual liability under § 1983 'is personal, so each defendant's conduct must be independently assessed.'") (quoting *Heartland Academy Community Church v. Waddle*, 595 F.3d 798, 805-06 (8th Cir. 2010)).

**E.      Summary**

Under the above discussion, the Court recommends dismissing this action in its entirety.  Given that recommendation, the Court also recommends denying the IFP Application as moot.

### RECOMMENDATION

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.      Plaintiff Bradly Allen McHorse's Complaint (Dkt. 1) be **DISMISSED WITHOUT PREJUDICE**, for lack of jurisdiction, to the extent it (a) brings claims against the State of Minnesota or against Defendant Keith Ellison as sued in his official capacity, or (b) he requests relief on behalf of others as discussed above.

2.      The Complaint be **DISMISSED WITHOUT PREJUDICE**, as frivolous, to the extent it brings any individual-capacity claims against Ellison.

3.      McHorse's Application to Proceed *In Forma Pauperis* (Dkt. 2) be **DENIED** as moot.

Dated: April 27, 2026                    */s/ Elizabeth Cowan Wright*
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge

9

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).